IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:11CR204 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| vs. | ) | AND ORDER |
| | ) | |
| MARK A. ROBLE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Findings and Recommendation (Filing No. 37) issued by Magistrate Judge F.A. Gossett recommending denial of the Motion to Suppress (Filing No. 28) filed by the Defendant, Mark A. Roble.  Defendant filed a statement of objections to the Findings and Recommendation and a supporting brief (Filing Nos. 44 and 45), as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a).  The Court has considered Defendant's brief and the responsive brief filed by the government (Filing No. 47).

Defendant is charged in a three-count Indictment with: (1) producing or manufacturing child pornography, in violation of 18 U.S.C. § 2251(a); (2) receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); and (3) possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  He seeks to suppress statements he made to law enforcement officers when they executed a search warrant at his residence on June 10, 2011.

Following an evidentiary hearing, Judge Gossett issued oral findings of fact and conclusions of law.  Judge Gossett found that Defendant was not in custody when he made statements to police prior to being given *Miranda* warnings, and that Defendant's

statements were voluntarily given under the Due Process Clause. Judge Gossett therefore recommended that the motion to suppress be denied. (Filing No. 37.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

Judge Gossett provided an account of the events surrounding the Defendant's interview. The Court has considered the transcript of the hearing conducted by Judge Gossett and carefully reviewed the evidence, including the audio recording of Defendant's conversation with the police. The Court concurs with Judge Gossett's factual findings, and based on a de novo review of the record, the Court adopts those findings.

On June 10, 2011, law enforcement officers executed a search warrant at Defendant's residence, pursuant to an investigation that indicated the presence of child pornography on computers located at Defendant's residence. Investigator Scott Haugaard, of the Nebraska State Patrol, who was the sole witness at the suppression hearing, described the events of that day. At 6:30 in the morning, approximately ten officers, some wearing uniforms and others wearing vests, surrounded the house to execute the search warrant. The officers were carrying their sidearms. The officers had parked their cars down the street so as to not block Defendant's driveway.

Several officers, including Haugaard, knocked on the front door, and the knock was answered by Defendant. Haugaard told Defendant that he was not under arrest and that he was free to leave. Haugaard explained that after executing the search warrant, the officers would leave without placing Defendant under arrest, and the U.S. Attorney's Office would decide later whether to proceed against Defendant. Haugaard also told Defendant that he had been "caught red-handed" and that it was a "slam dunk case." (Exh. 101, Transcript of Interview, at 5:7–19.) At some point early in the encounter, Haugaard moved the interview to an upstairs bedroom, approximately ten by twenty feet in area. Defendant spoke there with Haugaard and Detective Roy Howell; the interview was conducted almost entirely by Haugaard.

Defendant initially sat on his bed, and Haugaard sat next to him, and, later, sat on the floor or squatted near the dresser. Howell stood next to the window at the far side of the room. While they spoke, other law enforcement officers spread throughout the house to execute the search warrant. Haugaard received regular updates on the progress of the search. During the interview, Defendant asked permission to use the bathroom, and was allowed to use it with an officer standing outside the door, which was kept ajar. He asked for a drink of water, which the police fetched for him. The interview continued for approximately one hour and forty minutes before Defendant was given *Miranda* warnings. At that point, Defendant nodded that he understood each *Miranda* warning and signed a form agreeing to waive his *Miranda* rights. He then continued speaking with police for approximately forty-five minutes. At the end of the interview, Defendant was placed under arrest.

3

There are a few key statements that Haugaard repeated several times throughout the interview. Haugaard told Defendant that he was not under arrest and that he was free to leave, and assured him that he did not have to answer any questions. Haugaard told Defendant that he might receive a reduction in his prison time if he cooperated, stressed the importance of immediate cooperation (*See, e.g.*, *Id.* at 4:13–22, 8:1–3, 8:23–25), and indicated that this was his "one opportunity to come clean." (*Id.* at 33:18–19.)

Early in the interview, in response to a question, Defendant stated, "I can't even think any more." (*Id.* at 9:3–6.) Defendant did not repeat this or any similar statement and, for the rest of the interview, he responded to questions in a manner that indicated he was capable of rational thought. Throughout the interview, Haugaard was polite and friendly, and did not raise his voice. In response to Haugaard's questioning, Defendant soon admitted that he possessed child pornography. (*Id.* at 9:8–10.) Haugaard asked Defendant to make a written statement, telling him it would "give [Defendant] an opportunity to tell the prosecutor before we present our reports to the U.S. Attorney's Office what [Defendant was] going to do to change." (*Id.* at 13:9–13.) He asked Defendant to make such a written statement several more times, and at one point left him alone in the room to give him time to do so.

Haugaard told Defendant that he would likely go to prison, and that Defendant's ultimate sentence was outside of Haugaard's control. (*Id.* at 22:20–23:16.) He again stated that cooperation could result in a reduction in his sentence. Defendant eventually wrote a short statement expressing remorse for his actions but making no other admissions. (Exh. 2, form labeled "Voluntary Statement.")

4

Defendant eventually admitted that he had placed pinhole cameras in two bathrooms in his house, and had used these to make secret recordings of a visiting niece when she was eight years old and again when she was fourteen. Defendant accompanied the police and helped them locate the cameras, and even helped remove the cameras. He also admitted filming four neighborhood girls (in their early teens) swimming naked in the pool of an adjoining residence.

After suspecting that Defendant had produced child pornography (a more serious crime than possession), Haugaard and Howell decided to arrest Defendant, and can be heard discussing this briefly on the audio recording, apparently away from Defendant. (Exh. 101, Transcript of Interview, at 47:20–48:25.)[1] Haugaard continued to interview Defendant for approximately another twenty-five minutes, at which point he advised Defendant that he was going to be arrested and read Defendant his *Miranda* rights. (*Id.* at 64:9). After Defendant signed a form waiving his *Miranda* rights, the interview continued for approximately another forty-five minutes. The tone of the conversation remained the same as before the warnings were administered.

## ANALYSIS

Defendant objects to Judge Gossett's findings: (1) that he was not in custody when he made statements to police prior to being given *Miranda* warnings; and (2) that his statements were freely, intelligently, and voluntarily given.

---

[1] It is not clear whether the conversation occurred within Defendant's hearing, but from the audio recording the Court infers that Haugaard walked away from Defendant, then returned after the conversation with Howell, which took place in hushed tones. (Exh. 4, Audio Recording of Interview, at approximately 1:18:00–1:20:10.) There is no indication that Defendant knew the officers had changed their minds and decided to place him under arrest.

I.      *Miranda*

*Miranda v. Arizona*, 384 U.S. 436 (1966), "requires that law enforcement agents provide certain prescribed warnings before conducting an interrogation of a suspect who is in custody." *United States v. New*, 491 F.3d 369, 373 (8th Cir.2007).  There is no dispute that Defendant was interrogated by police, the only question is whether he was "in custody" prior to being given *Miranda* warnings.

"'The ultimate question in determining whether a person is in custody for purposes of *Miranda* is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *United States v. Perrin*, 659 F.3d 718, 719 (8th Cir. 2011) (*quoting United States v. Czichray*, 378 F.3d 822, 826 (8th Cir.2004)).  The Court examines the totality of the circumstances, and determines whether a reasonable person would "'have felt he or she was at liberty to terminate the interrogation and leave[ ]' the bedroom and the house."  *Id.* (*quoting J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2402 (2011)).

In examining the totality of the circumstances, the Court is guided by the following non-exhaustive factors:

> (1) whether the suspect was informed during the interview that the questioning was voluntary, that he could ask the officers to leave, or that he was not considered under arrest; (2) 'whether the suspect possessed unrestrained freedom of movement during questioning;' (3) whether the suspect voluntarily acquiesced to official questioning or initiated contact with authorities; (4) 'whether strong arm tactics or deceptive stratagems were employed during questioning;' (5) whether there was a police-dominated atmosphere; and (6) 'whether the suspect was placed under arrest at the termination of the questioning.'

*United States v. Czichray*, 378 F.3d 822, 827 (8th Cir. 2004) (*quoting U.S. v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)).

The Court finds that Defendant was not in custody before being given *Miranda* warnings. Defendant was told repeatedly that he was not under arrest, that he was free to leave, and that he did not have to answer any questions. This factor is to be weighed more heavily than the others and is "powerful evidence that a reasonable person would have understood that he was free to terminate the interview." *Id.* at 826.

It is true that some factors point to a finding of custody. Defendant did not initiate contact with the police, and he was placed under arrest at the end of questioning. The other factors, however, are mixed. Haugaard certainly employed "deceptive stratagems." For example, he indicated to Defendant that cooperation could result in a reduction of his sentence and that it was very important that he cooperate immediately, telling him it was his "one opportunity to come clean." (Exh. 101, Transcript of Interview, at 33:18–19.) This was offset by the fact that Haugaard told Defendant that his ultimate sentence not within the control of law enforcement (*Id.* at 22:20–23:16), and that Defendant did not have make a written statement. (*Id.* at 20:25–21:3.)

The atmosphere was, in one sense, police-dominated. Defendant answered the door at 6:30 in the morning and suddenly found nearly a dozen law enforcement officers entering his house to execute a search warrant. On the other hand, there is no indication that the room in which Defendant was actually interrogated was cramped. Only two officers were present in the room, and there is no indication they crowded Defendant.

Most importantly, the entire conversation between Haugaard and Defendant is quiet, polite, and conversational. Haugaard never raised his voice. The facts of this case are similar to those of *Perrin*, 659 F.3d at 720–22, where the Eighth Circuit found the defendant

was not in custody. Considering the totality of the circumstances, the Court finds that Defendant was not in custody prior to being given *Miranda* warnings.

## II.   Voluntariness

"A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (*quoting Simmons v. Bowersox*, 235 F.3d 1124, 1132 (8th Cir. 2001)). "Whether a confession is involuntary is judged by the totality of the circumstances." *Id.* "The court must look at the 'conduct of the officers and the characteristics of the accused.'" *Id.* (*quoting Wilson v. Lawrence Cnty.*, 260 F.3d 946, 952 (8th Cir.2001)). "The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary." *Id.*

The Court finds that the government has met its burden. The record does not suggest that Defendant's will was overborne. Defendant did state, early in the interview, "I can't even think any more." (Exh. 101, Transcript of Interview, at 9:3–6.) However, this sentiment was not repeated, and was not borne out by the responses he gave to the officers' questions. Later, midway through the interview, Defendant indicated that he may have welcomed the opportunity to confess, stating, "I hate to say this, but I am almost relieved. It's a terrible addiction." (*Id.* at 59:15–16.)

Any promises or deceptive stratagems employed by the police were not sufficient to overbear Defendant's will. The Eighth Circuit has found statements to be voluntary in cases where the "psychological pressure exerted on the defendant . . . [was] at least as great as the psychological forces presented in this case." *LeBrun*, 363 F.3d at 726. In

*United States v. Astello*, 241 F.3d 965 (8th Cir. 2001), the court found a confession voluntary where police, who were questioning an eighteen-year-old, refused to allow him to see his mother, despite his repeated requests; "placed time constraints on his decision whether to talk to them;" and implied that he would benefit from cooperation. *Id.* at 967–68. Like the subject of *Astello*, Defendant was "questioned for less than three hours and was not mistreated in any way." *Id.* at 968. Considering the totality of the circumstances, the Court finds that Defendant's will was not overborne and his statements were voluntarily given.

Accordingly,

IT IS ORDERED:

1. The Magistrate Judge's Findings and Recommendation (Filing No. 37) are adopted in their entirety;

2. The Defendant's Objections to the Findings and Recommendation (Filing No. 44) are overruled;

3. The Government's Response (Filing No. 47) is granted; and

4. The Defendant's Motion to Suppress (Filing No. 28) is denied.

DATED this 9th day of December, 2011.

BY THE COURT:

S/Laurie Smith Camp
Chief United States District Judge

9